Good morning, and may it please the court. I'm Jeffrey Ehrlich for the appellant and the plaintiff, Ms. Ramirez. This is an appeal from a summary judgment in a products liability case. The product maker, ITW, made a Hobart MG 1532 mixer grinder that injured her. And there are three critical facts, each of which is undisputed, that really govern the outcome of the summary judgment and the outcome of the appeal here. The first of those facts is that ITW designed the grinder so that the power to its motor was supposed to be cut off and the blades within the grinder would stop spinning when the lid to the device was lifted. That's a safety feature to prevent the blades inside that do the grinding from spinning and continuing to spin when the machine is exposed and someone might reach inside. The second undisputed fact is that the instruction manual for the MG 1532 specifically told its users that whenever the hopper lid is opened, the power to the motors is shut off. And it also said that an interlock switch requires the hopper lid to be closed before the machine can operate. Raising the hopper lid opens the electrical circuit and makes the machine inoperative. And then the third fact is that on the day that Ms. Ramirez was injured, on October 17, 2010, the machine didn't operate that way. Is this like a manufacturing defect case? You're not contending that anything's wrong with the design? No, I think it is. I don't want to foreclose it, but I think it's a design defect. Well, you just said it was designed to turn off. Well, it was designed to but didn't because the design's defective. So that's not a – because the design was defective? Yes. Or something was defective about the product because it didn't conform to the design? It's not – the problem is that the design is faulty because as designed, the machine can fail in a manner so that the reed valve or reed switch, which has happened here, was in contact. So instead of lifting up the lid and having the circuit broken, the circuit remained intact. So the defect was – That's a manufacturing defect claim. As I see it, you've got two different design – or that's U-style design defect claim. One is the fact that there should have been a lock on the lid that prevents the lid from opening while the blade's spinning. Right. So that's the design defect. The second theory that the lid is designed to cut off power when it's open, that's a manufacturing defect claim. But it didn't work the way it was designed because it was designed properly, right? The blade is supposed to stop spinning. Right. But if the design itself is insufficient to achieve the outcome, then that's a manufacturing defect. But do you have any other evidence such as other cases in which the same or similar accident has taken place, which would support a design defect? Or is this accident the tip of the iceberg or, you know, certainly evidence of it? Under California law, under the Consumer Expectation Test, you don't need to have to show a design defect other defects. We have a motion for judicial notice pending before the court, which does have OSHA examples of other people having their hands injured by Hobart machines that didn't shut off when the lid was operated. But I don't think that's really relevant to the issue here. And whether it's a design – a manufacturing defect is that the design is fine, that there was some flaw in the way that it was manufactured and it didn't perform appropriately. And maybe that's the case here. But clearly, if you have a product that, as designed, doesn't operate – so, Your Honor, when you say it was designed to shut off, it just didn't do it, that's because the design is flawed, because they've designed it in a way without the appropriate, as our electrical engineer, Mr. Bennett, said, without having a fuse that, in the event that there is an overcurrent that causes that reed switch to fail in the closed position, so you don't have a fuse to protect and to cut off the power. I think that's a design defect. But irrespective, the issue under the consumer benefit, or consumer expectation test, rather, is simply that if you make promises to the user in the manual, and then the device doesn't operate the way the manual says it will, then that essentially creates triable issue of fact about product defect under California law, under McCabe. McCabe was a case where the user's Honda Civic had an airbag that didn't operate in a head-on collision. And there was a summary judgment granted for Honda, and it was reversed on appeal. And the court of appeals said, under the consumer expectation test, you look in the manual, the user manual, and it says that the airbags are going to inflate in a serious head-on collision equivalent to hitting a severe frontal collision comparable to a crash into a parked car at 25 miles per hour. And the court said that because the consumer expectation test is rooted in warranty principles, it necessarily extends to a case in which it's alleged that the product failed to perform in accordance with the representations contained in the owner's manual. And that's true even if the particular user, the plaintiff, hadn't read or relied on the manual because it's an objective test about a reasonable consumer. There's also an element of foreseeability in this, too, isn't there? Well, isn't it? Shouldn't the product perform in a manner reasonably foreseeable in terms of the way it's going to be used? Yes. Yes. So in California, the essential elements of a consumer expectation test are framed for a jury in essentially a mandatory instruction. In California, we have the Judicial Council promulgates these form instructions, and it's virtually mandatory that courts use them, and they're called CACI, C-A-C-I. And so the CACI instructions for consumer expectation, the jury is told that the plaintiff has to prove four things. These are the essential elements of the claim. That the defendant manufactured the product. That the product didn't perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way. That the plaintiff was harmed. And that the product's failure to perform safely was a substantial factor in causing the harm. That's all you have to show. So you don't need an expert for that under the consumer expectation test. So if we find that the district court properly excluded the expert, would you still have a case? Yes, we would. But I guess I should get to that. Not under the risk-benefit test, though. No, I think actually, as our briefs make it pretty clear, you can, even under the risk-benefit test, you don't need an expert. And certainly for summary judgment, we didn't. Under the risk-benefit test for summary judgment, all we had to do was show that, to establish proximate cause, that the design proximately caused the injuries. And in McCabe, essentially, that showing was made by the fact that the airbag didn't inflate and the plaintiff's face hit the steering wheel. At that point, the burden shifts in summary judgment to the defendant, manufacturer, to defend and show the benefits of the design outweighed the problems with it. And ITW made no showing here. Now, with respect to the exclusion, let's talk about Mr. Bennett first. His opinion was simply that there had to be a fuse that was in line here to protect the device and protect the user. And the district court said, well, you haven't tested it. You haven't shown that would work. And that is just false. First of all, Mr. Bader, the designer, did a test that put a fuse in it, and it did work. And the court was confused. Mr. Bader's testimony was that although the machine stopped working, the fuse didn't protect the internal reed switch from fusing. But the purpose of the fuse isn't to protect the reed switch. The purpose of the fuse is to turn the machine off if the reed switch fails. So there was no basis to exclude an expert saying that you need to have a fuse, and you didn't need to completely work out every detail of how it would work. That is the most basic element of electrical engineering is putting a fuse in a circuit. And with respect to the clamp and the solenoid bolt, that's very common technology that stops lids like in dishwashers and washing machines from continuing to spin when you open it up. So there was no reason. I'm just going to save the balance of my time. All right. I have a question I want to just answer very quickly. In footnote 6 of his opinion, I'm sure you're familiar with it, Judge Burroughs says this, right, that it's illogical to apply the consumer expectation test because both Ramirez and her supervisor used a mixer grinder several times a day, knowing and therefore expecting that neither the stop button nor lifting the hooper lid would cut the power to the motor. And, therefore, this is governed by the risk-benefit test. Well, what's your response to that? First of all, in our brief, First of all, it is so, isn't it? There is evidence that they used this grinder several times a day. There is evidence, but the testimony, and we have this in our opening brief, we explain that when they complained about it, the supervisor purported or thought he'd fixed it, and Ms. Ramirez thought the machine had been fixed, and that's when she continued to use it. And, second of all, under the consumer expectation test, you don't look at what the plaintiff did. You look at the design, the expectations of a reasonable consumer, and so, therefore, I don't think you can just say we're not going to use that test because of her particular knowledge. So I think at most there would be a triable issue of fact on that. All right. Thank you, counsel. We'll give you a couple of minutes for rebuttal. May it please the Court? Good morning. My name is Andrew Cox. I'm here for the Appellee ITW Food Equipment Group. We're asking that this Court affirm the district court's order excluding appellant's experts. Judge Biro's well-reasoned opinion is contained in a 30-page order, which is before this Court. He goes through in great detail the expert's deposition testimony. He applies the Daubert factors to that testimony, as well as Ninth Circuit authority and district court opinions, excluding similarly unreliable testimony. And he concludes, as is well within his discretion, that appellant's two experts lack a reliable scientific methodology supporting their opinions. And he properly excludes them. Do you agree? Well, first of all, I think it's pretty clear. Judge Biro concluded that the consumer expectation shouldn't be applied to this case. But speaking hypothetically now, if the consumer expectation test applies, you agree that expert testimony was not necessary? No, Your Honor. Expert testimony was necessary in this case. And in particular, the consumer expectation test wouldn't apply where the district assuming it applies, why is expert testimony necessary? The design defect theory in the district court below was that there was a particular way that the stop switch turned in its mounting over time as it was pushed, that it rotated, it came into contact with water, and it created a fault current. The fault current went through the electrical system of the machine. Well, that doesn't matter, though. Under the consumer expectation test, the consumer expects when you open this meat grinder's lid, the motor's going to stop. I mean, that's within the knowledge of an ordinary consumer, isn't it? A user of a grinder machine. Well, if the design defect claim is that an ordinary consumer would expect the lid to stop the motor when you raise it, then we can end this appeal. Because it's undisputed, as counsel acknowledged, that this machine was designed to cut the motor when you raise the lid. That's an undisputed fact in this case. Oh, but as I understand Mr. Ehrlich's position, the design defect is that they should have used a different switch. Precisely, Your Honor. No, it should have been designed to use a different switch. And that's something that is beyond the ordinary consumer's knowledge. What type of electrical switch to use in a commercial-grade 150-pound capacity meat mixer grinder that's used in large supermarkets by professional meat room workers, that is way beyond the ordinary consumer's expectation or understanding. But that's premised on your theory that because this is a commercial endeavor, we don't have ordinary consumers using the equipment, isn't it? No, absolutely not. It's premised on the fact that their theory of failure is very complex. It relates to the force of movement on a stop button and whether that is sufficient to cause a factory-mounted switch to rotate. The effect of that rotation when the electrical part of the switch touches water that was inside the electrical panel because the machine was misused. It was sprayed down with a hose. He's also got a lid lock theory on the design defect claim too, right? Appellant's own expert admitted that a solenoid lock would have to be specifically designed for this product. And he also admitted that he wasn't qualified to address the electrical aspect of it. So given that admission, I don't see how we could conclude that the ordinary consumer could hypothesize that a solenoid lid lock could be built and added to this machine. Would your answer be the same if this was a smaller grinder that consumers use at home in their kitchen? The same principles, but it's just smaller. My answer would be the same if their defect theory was the same and their defect theory is that the type of switch used was improper, that a different type of switch needed to be used. I would also add the theory as to why this machine failed to operate as it was designed is itself simply a theory. I missed that. Because why? It's simply a theory. It required expert testimony in order to support this belief, this theory that they had, that a fault, first of all, that the switch could even create a fault current, that that fault current would have this effect. Normally it takes a magnet to make the two reeds come together. Here they're hypothesizing that a low-level fault current made the two reeds come together. Doesn't your theory, though, basically eviscerate the consumer expectation test by essentially saying that because any type of equipment can be made to be complex, or at least the machinations of that machine can be made to be complex, you will always have to have an expert? Absolutely not. I think that there are indeed cases, and the Campbell case is an excellent example, the California Supreme Court's decision in Campbell, where an ordinary consumer can observe the design feature at issue. In Campbell, a woman got onto a bus, and she could see vertical and horizontal grab bars all over the bus. She sat in a seat that for some reason General Motors designed without a grab bar. When the bus took a sharp turn, she put her hand out where anybody would to grab the grab bar and fell on the floor. So she could observe from her ordinary experience that bus seats normally have grab bars. This one did not. That made a product that fell below her expectations. So if the design feature at issue is within the ordinary understanding of the consumer, you could conceivably have a consumer expectation-based design defect claim under California law without an expert. That's not the case here because their design defect claim was very technical. It had to do with first beginning with could this stop button create the fault current and have this effect on the reeds? Could it do that? That was a theory. It was never tested. It was never put into evidence. There are other theories about an inline fuse and a solenoid clamp lock, also pure hypotheticals. As this court said in Shalabi versus Industrial Tool Company, and this is in the brief, to establish a prima facie case of product liability, California law requires substantial evidence establishing both the defect and causation, parenthetical, a substantial probability that the design defect and not something else caused the plaintiff's injury, and where the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation. That's 379 Fed Appendix 620. It's also cited in the briefs. Their causation theory was that by simply pressing the stop button, that ordinary movement could cause it to switch. Now, keep in mind, this is against a backdrop where this machine was altered, modified, and abused. But under the consumer expectation test, doesn't one have to also consider foreseeable misuse of a machine? Yeah. Well, yes, Your Honor. I think it's where foreseeable misuse comes into play is that a manufacturer generally has a duty to design a product to be safe for its intended and foreseeable misuses. But that's not, that typically would apply if someone is misusing the product. The misuse I was referring to is they were spraying it down with a hose. It's still misuse by any other name. It's still misuse, isn't it? Absolutely. And not once did they advance a design defect claim that dealt with the watertight nature of the product or anything of that nature. That has not been the claim below. The claim has always been that the switch rotated, got in contact. Bottom line is there was no doubt that you could foresee that someone might lift the lid while the machine was in operation. And it was supposed to stop, right? And that's exactly how the machine was designed. It was designed with an interlock to stop the motor when you raised the lid. And it was in that condition when it left the manufacturer's control. And you can go all the way back to Barker v. Lull. You can see when the California Supreme Court talks about design defects, they are talking about the machine as designed when it leaves the manufacturer's control or when it's put into the stream of commerce. It's undisputed that at that moment in time, our machine was designed to cut to power when you raised the lid. And based on our testing records, which are in the record, it was, in fact, operating in that condition. And it was never designed or never contemplated that some commercial owner would wash it down with water? It was a meat grinder. So it was not supposed to be washed down with water? They were spraying it with a hose, Judge. I mean, it's not for outdoor use. It's an indoor product. You don't spray it down with a garden hose. You're supposed to wipe it. Are you saying that the fact that the machine was not in the same condition as when it left the manufacturer's facility is an undisputed fact? Yes, that's undisputed. In fact, the interlock switch itself had been replaced just four weeks before the accident. The very part of the product that they're claiming failed to work at the time. Replaced with what? It was replaced by a pellant, by IRTA. But replaced with a different type of interlock or what? It was replaced with an interlock switch. I noticed in a pellant's brief it's referred to as a factory original. I do not believe that's in the record. But it was replaced with an interlock switch because the prior one was not functioning. Well, you think it's a different switch? I don't know. There's no evidence in the record. No, then how can you say it's not the same if you don't know? Oh, I'm saying I didn't say that. I said I don't know if it was. Well, you said it wasn't in the same condition as it was when it left the manufacturer. Well, right. Yeah, absolutely. Why? If they replaced it with the same switch, it would be in the same condition. Well, there are a number of things they did to it. If they replaced the switch, it's not in the same condition because necessarily that required someone to rewire it from the factory original wiring. There was splicing into the back of the stop switch, which their expert hypothesized was due to corrosion around the switch. There were misplaced fuses in the control panel. And then, of course, there was the water infiltration. So it wasn't in the same condition. So it would take, I guess it's part of your position then, it would take expert testimony to opine on whether or not these, I'll call them modifications, caused the accident. Is that right? Yes, Your Honor. I believe that this is one of those cases where to attribute the cause of this failure to perform as designed to either a design defect or a modification, expert testimony would be required. Do you have testimony from your side that the switch was improperly placed or the switch that replaced it was improper for that machine? No, Your Honor. Our testimony focused on the condition when it left our control. And we have ample evidence in the record that at that time it was properly designed to do exactly what they claim it should have done. So I agree. That is the key fact in this case. When it left our control, it was designed to stop the power when you raised the lid. Something happened to it after that, allegedly. And they know that. That's why they advanced expert testimony trying to explain why it operated that way and trying to attribute it to the design. That is what California law requires. Even under the consumer expectations test, they have to attribute the failure to the design. And if we decide that the consumer expectation test is applicable here then, there is a genuine issue of material fact, right? No, not without the experts. No, not without the experts, Your Honor, because there's nothing attributing the failure of the product to perform as designed to the design without the experts. That's what Mr. Bennett attempted to do. That was his theory with the stop switch being in such a condition. Right, but there's two theories. The lid locking thing, I think their expert could cover that. Right. Their expert, if he had admissible testimony, which as Judge Andre Barreau correctly determined, his opinion was nothing more than a hypothetical. He didn't test it. He couldn't identify a clamp lock that existed anywhere in the market that he could say would just be put on this product. I heard counsel refer to the type of solenoid that's on a washing machine. He specifically said, I can't identify a clamp lock on the market that can be just taken and put on this machine. He further said that because it's a combination of a mechanical and an electrical device, that he, as a mechanical engineer, was not even qualified to design on the electrical portion of the switch. So how could he possibly be qualified to testify to this alternative in court? All right. I think we've taken you well over your time, so unless my colleagues have any additional questions. Thank you very much for your argument. Thank you. I'd like to begin by going back to Judge Tashima's question. On page 25 of the blue brief, footnote one, we point out that Ramirez testified that she thought that someone had fixed the grinder. That's at 2ER136, and that there was testimony that the problem had been reported to her supervisor, and once he cleaned the excess meat off the grinder, it had resumed functioning normally again at 2ER145. So that's the response to that question. The essence of counsel's argument is this sort of amalgam of blending the two tests. He utterly refuses to talk about the consumer expectation test, and the arguments he's making are completely all refuted by McCabe. McCabe makes it very clear. If you say things about how your product operates in the operating manual, it's designed to do a certain thing, and then it doesn't do what the manual says it's going to do, that raises a question under the consumer expectation test, and you don't need an expert. There was no expert in McCabe. You don't need an expert. All you need to do is look at the elements, and essentially you don't need to say why the product failed as part of the consumer expectation test. Kennedy, what about his argument in effect that the machine was modified? That could be a defense, Your Honor, that they would bear the burden of showing that the reason that it failed was because of faulty maintenance or some modification. That's in the record. But that's part of the ‑‑ that's a triable issue of fact. It wasn't a finding. That's something they bear. It's a triable issue of fact if you contest it. Did you contest that, that you know there was different wiring, there was a different switch and all that? Is that contested? The ‑‑ Mr. Bennett's testimony is that the electrical panel that he examined on the machine was in factory condition when he examined it, and that's in the record. So the fact that there were splices or that they hosed it down is nothing more than they have a burden of establishing a defense. The judge didn't rule on it, and the judge basically said that if you can't ‑‑ the defense position is that we had to show the mechanism of failure, and that's not part of the consumer expectation test. And frankly, when counsel talks about causation, he's mistaking the cause, meaning the cause of the failure, from causation for the tort. Causation for the tort is that the design, the fact that the lid opened and the blades kept spinning, was a substantial factor in causing her harm. Those are two different questions. And so I think that I would implore you to read McCabe. I think that we address all of their arguments, every single one, very effectively in our reply. I urge you to read that. I think ‑‑ We understand. We've got your arguments. I appreciate it. Thank you very much, both sides. The matter just heard is submitted for decision by the Court.
judges: Tashima, Nguyen, Marbley